IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Derrick F. Williams,  ) | |
| ) | Civil Action No. 6:15-3236-TMC-KFM |
| Petitioner,  ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs.  ) | |
| ) | |
| Warden Tim Riley,  ) | |
| ) | |
| Respondent.  ) | |
| _____ ) | |

   The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

   The petitioner is currently incarcerated at Tyger River Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Anderson County Grand Jury in April 2008 for trafficking in cocaine 200 grams or more but less than 400 grams (2008-GS-0895) and possession of a weapon during the commission of a violent crime (2008-GS-04-0896).[1] Druanne White and Sarah Drawdy represented the petitioner on the charges.

---

[1]Trafficking in cocaine 200 grams or more but less than 400 grams carries a mandatory minimum sentence of 25 years without parole. S.C. Code Ann.§ 44-53-370. Possession of a weapon during a violent crime carries five years. Accordingly, the petitioner was facing a maximum sentence of 30 years if he proceeded to trial.

On October 16, 2008, the petitioner pled guilty before the Honorable J. Cordell Maddox, Jr., Circuit Court Judge, to the lesser included offense of trafficking in cocaine greater than 28 grams but less than 100 grams[2] and possession of a weapon during the commission of a violent crime.   Judge Maddox accepted the negotiated plea, and the petitioner was sentenced to 12 years confinement on the trafficking charge and five years, concurrent, on the weapon charge.  The petitioner had previously been convicted in North Carolina of assault, inflicting serious injury, and resisting arrest.  The petitioner did not file a direct appeal.

**Underlying Case Facts**

On January 29, 2008, at 1:00 a.m., the petitioner was stopped for speeding on Interstate 85 ("I-85") by an Anderson County Deputy Sheriff (Deputy Moore).   The petitioner was traveling north from Georgia into South Carolina.  After the officer activated his blue lights, the petitioner continued to travel on I-85 for approximately one quarter of a mile [15 to 20 seconds on the car video of the stop].  The petitioner then pulled over in the emergency lane and continued to travel for approximately ten to 15 seconds before stopping his vehicle.  The petitioner had a North Carolina driver's license and was driving a one day rental car.  Another deputy (Deputy Crawford) was called to the traffic stop, and while the officer who stopped the petitioner was writing the petitioner a ticket, the second officer had a drug dog circle the petitioner's vehicle.  The drug dog positively indicated on the petitioner's vehicle.  The subsequent search of the vehicle resulted in the discovery of 242 grams of cocaine in a vacuum sealed bag in the engine compartment of the rental car. Officers found a black leather bag containing a loaded 9mm pistol in the trunk.  The petitioner also had $776.00 in cash that was located underneath the driver's side front floor mat.  Officers also seized a vacuum sealer and scales from inside the  car. The petitioner pled guilty and admitted at his guilty plea that he was guilty of both trafficking in cocaine

---

[2]Trafficking in cocaine greater than 28 grams but less than 100 grams carries seven to 25 years confinement. S.C. Code Ann. § 44-53-370.

greater than 28 grams and possession of a weapon during the commission of a violent crime (app. 1-6, 46).

### First PCR

The petitioner filed an application for post-conviction relief ("PCR") on August 12, 2009 (Civil Action #2009-CP-04-3074). In his application he raised the following claim:

> 1. Ineffective assistance of counsel;
> a. Coerced by counsel to not file appeal, after seeking for appeal after incarceration and being told applicant would receive the max sentence if he invoked.

(App. 33). The respondent made a return on December 15, 2009. An evidentiary hearing was held on March 6, 2012, at the Anderson County Courthouse before the Honorable R. Lawton McIntosh, Circuit Court Judge ("the PCR court"). The petitioner was present at the hearing and was represented by Christopher Brumback and Edward C. Nix. Mr. Brumback agreed with the respondent's statement of the following PCR issues:

> Failure to file an appeal, involuntary guilty plea, a number of ineffective assistance of counsel, failure to investigate, newly discovered evidence, lack of subject matter jurisdiction, failure to quash indictment and a conflict of interest claim.

(App. 39). The respondent was represented by Kaelon E. May of the South Carolina Attorney General's Office. At the hearing, the petitioner testified in his own behalf. He stated that his attorney was ineffective because she failed to (1) advise him that she had not received drug dog certification records; (2) properly advise him there was a missing link in the chain of custody; (3) advise him he was illegally searched; (4) advise him that the indictments failed to infer subject matter jurisdiction; (5) advise him about his appeal rights; (6) investigate sheriff's deputies and (7) appear at his plea hearing (app. 47-48). The State offered the testimony of Druanne White, the petitioner's plea counsel, and Sarah Drawdy, the attorney who stood in for Ms. White at the petitioner's plea hearing. The PCR court also had before it the records of the Anderson County Clerk of Court regarding the

3

petitioner's conviction and sentence, the transcript of the proceedings against the petitioner, and the petitioner's records from the SCDC.  In an order of dismissal filed May 24, 2012, the PCR court denied and dismissed the PCR application with prejudice (app. 138-52).  The petitioner's PCR counsel did not file a Rule 59, SCRCP, motion to alter or amend the order of dismissal.  The petitioner attempted to file a *pro se* Rule 59 motion; however that *pro se* motion was improper under South Carolina law and was rejected.[3]

### *PCR Appeal*

The petitioner appealed the denial of his PCR application to the South Carolina Supreme Court by way of a *Johnson* petition for writ of certiorari (doc. 41-4).  The petitioner was represented in the PCR appeal by Wanda H. Carter, Deputy Appellate Defender, of the S.C. Office of Appellate Defense.  In the *Johnson* petition, Ms. Carter raised the following issue to the South Carolina Supreme Court:

> The PCR judge erred in denying petitioner's allegation that he did not voluntarily waive his right to a direct appeal in the case.

(doc. 41-4 at 3).  Collateral appellate counsel certified to the South Carolina Supreme Court that the appeal was without merit and asked to be relieved as counsel (*id.* at 7).  The petitioner filed a *pro se* response to the *Johnson* petition (doc. 41-5).  In the *pro se* response, the petitioner raised the following issues:

> 1. The PCR Judge erred in denying Petitioner's allegation that trial counsel failed to discover the non-existence of K-9 certification records.
>
> 2. The PCR Judge erred in denying petitioner's allegation that trial counsel's misrepresentations to petitioner created a conflict of interest.

---

[3]South Carolina has a recognized prohibition against hybrid representation. *Dennison v. State*, 639 S.E.2d 35 (S.C. 2006); *State v. Cabrera Pena*, 567 S.E.2d 472 (S.C. Ct. App. 2002).  PCR counsel cannot merely serve as a conduit for the petitioner's *pro se* motions. *Jones v. State*, 558 S.E.2d 517 (S.C. 2002)(counsel must review motions submitted by his client and determine if they are valid).

(Doc. 41-5 at 2, 4).  The appeal was transferred to the South Carolina Court of Appeals. On July 17, 2015, the South Carolina Court of Appeals denied the petition and granted counsel's request to withdraw (doc. 41-6).  The remittitur was issued on August 11, 2015 (doc. 41-7).

### Second and Third PCRs

The petitioner filed a second PCR application on March 26, 2013 (Civil Action No. 2013-CP-04-0661).  The respondent made its return, requesting the application be summarily dismissed for failure to comply with the South Carolina statute of limitations for PCR actions and because the action was improperly successive under South Carolina law. The petitioner filed a third PCR action on December 20, 2013 (Civil Action No. 2013-CP-04-2766).  The respondent moved to consolidate the two PCR actions.  On May 12, 2014, the second PCR court issued an order consolidating the PCR actions into one action (Civil Action No. 2013-CP-04-0661) and treating the third PCR application as an amendment to the second PCR application (doc. 41-11).  On November 20, 2014, the Honorable R. Lawton McIntosh, Circuit Court Judge ("the second PCR court") filed a conditional order of dismissal, finding the consolidated PCR application should be denied and dismissed with prejudice for failure to comply with the state statute of limitations, for being improperly successive, and barred by *res judicata* (doc. 41-13).  The petitioner was given 20 days from the date of service of the order to show why the order should not become final (*id.* at 10).  The conditional order of dismissal was served upon the petitioner on July 13, 2015 (doc. 41-14).  On July 28, 2015, the petitioner filed a notice of appeal of Judge McIntosh's conditional order of dismissal (doc. 41-15).

### Fourth PCR

The petitioner filed a fourth PCR application on October 6, 2015, with the Anderson County Clerk of Court (Civil Action No. 2015-CP-04-02296) (doc. 41-16). The respondent states that the fourth PCR application was merged with the second and third

5

applications (doc. 59 at 18). On February 25, 2016, the petitioner sent a letter to the Anderson County Clerk of Court stating that he was "dropping" his second, third, and fourth PCR applications "to do away with all unexhausted claims as they relate to [the instant] federal habeas petition" (doc. 49). The petitioner filed the letter in this court on February 29, 2016 (*id.*). The respondent states that the petitioner's second, third, and fourth PCR actions were dismissed[4] pursuant to Rule 41, SCRCP (doc. 59 at 18). Accordingly, the petitioner no longer has any PCR actions pending in state court.

### FEDERAL PETITION

On August 18, 2015, the petitioner filed his Section 2254 petition (doc. 1). After being granted three extensions of time, the respondent filed a motion for summary judgment (doc. 40) and a return and memorandum on February 16, 2016 (doc. 41). By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion (doc. 42). After being granted two extensions of time, the petitioner filed a response in opposition to the motion for summary judgment on March 23, 2016 (doc. 53). On April 19, 2016, the respondent filed a reply (doc. 59).

In his federal habeas corpus petition, the petitioner makes the following claims:

> **Ground One:** Ineffective Assistance of Counsel/ Non-existence of k-9 certification.
> Supporting facts: My guilty plea was involuntary and unintelligent in that counsel improperly advise me as to the certification of the k-9 and deputy's lawful ability to conduct free air sniffs. The absence of a lawful certification by k-9 and deputy is a violation of the 14th amendment due process of law, therefore, the evidence would have most probably been

---

[4] The Anderson County Tenth Judicial Circuit Public Index reflects that the fourth PCR action was dismissed on February 26, 2016 (*see* http://publicindex.sccourts.org/Anderson/PublicIndex/PISearch.aspx).

suppressed, as a result of that incorrect advice, I did not fully understand the consequence of my plea (see Notice and Motion to Amend PCR, stamped August 27, 2010).

**Ground Two:**  Ineffective Assistance of Counsel / *Brady* violation, edited video.
Supporting facts: Petitioner's guilty plea was involuntary and unintelligent in that counsel failed to properly advise petitioner that the video had been edited and that the editing was a violation of petitioner's due process rights. As a result, I did not fully understand the consequences of my plea. I contend that had counsel properly advised me, I would not have pled guilty and would have proceeded to trial.

**Ground Three:** Ineffective Assistance of Counsel / Failure to adequately investigate deputies.
Supporting facts: Petitioner's guilty plea was involuntary and unintelligent in that counsel failed to adequately investigate deputies whom had credibility problems, and use their testimony to impeach them. As a result, I did not fully understand the consequences of my plea. I contend that had counsel properly investigated and impeached deputies, I would not have pled guilty and would have proceeded to trial. In violation of my 14th Amendment right to due process.

**Ground Four:**  Ineffective assistance of counsel / Conflict of Interest.
Supporting facts: Petitioner's plea was involuntary and unintelligent in that counsel improperly advised me as to the profession of the k-9 expert she hired to provide an extremely important opinion on the fee air sniff conducted by Deputy Crawford on my vehicle, as a result of counsel's erroneous advice, I did not fully understand the consequences of my plea. Petitioner contends that he would not have pled guilty had counsel correctly advised me as to the conflict of interest.

(Doc. 1 at 5, 7, 8, 10).

In the return and memorandum in support of the motion for summary judgment and in the reply memorandum, the respondent sets out "possible additional grounds" raised by the petitioner, all of which allege ineffective assistance of PCR counsel and/or PCR appellate counsel (doc. 41 at 31-34; doc. 59 at 19-22; *see* docs. 1-1, 34)).  In his response in opposition to the motion for summary judgment (doc. 53 at 26-28) and in

7

his motion to strike impertinent and redundant portions of the respondent's return (doc. 46 at 1-2), the petitioner makes clear that the "possible additional grounds" cited by the respondent are not raised as additional grounds in the federal petition but rather are raised in support of his argument that the ineffective assistance of his PCR counsel should excuse the procedural bar of his procedurally defaulted claims under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).  Accordingly, the court will only specifically address the four grounds set out above.

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient

to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Exhaustion**

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17-27-10,-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[5]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693–94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

The petitioner did not file a direct appeal. He filed a PCR action, which was denied by the circuit court. He subsequently appealed that denial. The appeal was also denied and dismissed. The petitioner then filed three more PCR actions, which were consolidated and conditionally denied and dismissed by the second PCR court. The petitioner and respondent agree[6] that the second, third, and fourth PCR actions have now been dismissed pursuant to the petitioner's request (doc. 53 at 1; doc. 59 at 23). Accordingly, the petitioner has exhausted his state court claims. However, the respondent argues that the petitioner failed to *properly* exhaust his state remedies, and, therefore, Grounds One, Two, and Three are procedurally barred on federal habeas review.

---

[6] The respondent originally argued in the motion for summary judgment that the petitioner had not exhausted his state court remedies because his second, third, and fourth PCR actions were still pending (doc. 41 at 35). However, in the reply, the respondent acknowledges that the PCR actions have been dismissed (doc. 59 at 23).

***Procedural Bar***

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts.  In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'"  *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999).  "Alternatively, Petitioner may prove that failure

11

to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), the United States Supreme Court carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [501 U.S. at 754–55] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318–19, 1320–21). The Court in *Martinez* also noted:

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

### *Ground One*

In Ground One of his petition, the petitioner claims that his guilty plea was not knowing and voluntary because his counsel failed to advise him of the (alleged) non-

12

existence of certification records for the handler and drug dog that positively indicated on the petitioner's vehicle. The petitioner contends, "The absence of a lawful certification by K-9 and deputy is a violation of the 14th amendment due process of law, therefore the evidence would have most probably been suppressed" (doc. 1 at 5). The petitioner argues in response to the motion for summary judgment that had he known "that the prosecution was suppressing the non-existence of the certification for the k-9 and deputy" he would not have entered the negotiated plea (doc. 53 at 12).

The respondent argues that this ground is procedurally barred because, while the PCR court addressed a related claim, it did not address this specific claim, and the petitioner failed to file a Rule 59 motion to have this specific issue addressed by the PCR court (doc. 59 at 24). The related claims the respondent acknowledges were addressed by the PCR court were (1) whether counsel was ineffective for failing to obtain the canine certification records and (2) whether the petitioner's guilty plea was involuntary because he thought counsel had obtained the canine certification records (*id.*). In his response, the petitioner agrees with the respondent that the PCR court did not address the specific ground at issue here but argues that the procedural default of this ground should be excused under *Martinez* because it was caused by his PCR counsel's failure to adequately raise the issue at the PCR hearing (doc. 53 at 7-8).

The undersigned finds that this ground for relief was raised to and ruled upon by the PCR court (app. 147-51). Furthermore, the petitioner raised this issue on appeal in his *pro se* response to the *Johnson* petition (doc. 41-5 at 2-4). Accordingly, the court will address the merits of this ground below. Should the district court find that the ground is procedurally barred because the PCR court addressed the claim in a slightly different context and the petitioner failed to file a Rule 59 motion to have the specific issue addressed, the petitioner has failed to show cause for the default and prejudice from the asserted error. Any argument that the ineffectiveness of PCR counsel provides cause for

13

the procedural default of this ground for relief fails because Ground One is not substantially meritorious as will be discussed below in the merits review. *Martinez*, 132 S. Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

### Ground Two

In Ground Two of his petition, the petitioner claims that his plea counsel was ineffective because she failed to properly advise him that the videotape of the car stop had been edited and that this editing was a violation of his due process rights. The petitioner states that he did not fully understand the consequences of his plea. He further states that had counsel properly advised him, he would not have pled guilty and would have proceeded to trial (doc. 1 at 7).

The respondent argues that this claim is procedurally barred, and the undersigned agrees. This issue was not addressed by the PCR court in the order of dismissal (app. 138-52), and the petitioner did not file a Rule 59 motion to have the PCR court address the issue. Further, this ground was not raised on PCR appeal in either the *Johnson* petition or the *pro se* response. The petitioner's second, third, and fourth PCR actions, which were consolidated, could not preserve this ground as the actions were dismissed on adequate and independent state grounds, i.e. Rule 41, SCRCP. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (stating that "federal habeas corpus relief does not lie for errors of state law").

To the extent the petitioner argues that the ineffectiveness of PCR counsel provides cause for the procedural default of this ground for relief, such claim fails because Ground Two is not substantially meritorious as will be discussed below. *See Martinez*, 132 S. Ct. at 1319. To the extent the petitioner raises a claim that ineffective assistance of PCR

appellate counsel may allow for excusal of the default of Ground Two because it was not raised on appeal from the denial of PCR, he is mistaken.  The Court in *Martinez* specifically left in place the prohibition in *Coleman v. Thompson* that allegations of ineffective assistance of collateral appeal counsel could not provide excuse to avoid a default. *Martinez*, 132 S.Ct. at 1320.  *See Coleman*, 501 U.S. at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas.").

To be entitled to relief on an ineffective assistance claim, the petitioner must show that (1)  trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984).  *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)).   There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.  In order to satisfy the prejudice requirement of *Strickland* following a guilty plea, a petitioner who alleges ineffective assistance of counsel must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"It is beyond dispute that a guilty plea must be both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28-29 (1992). *See also Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("[A] guilty plea should only be accepted where the record evidences 'an affirmative showing that it was intelligent and voluntary.' "). "When a criminal defendant has solemnly

15

admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" was incompetent. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Plea counsel, Ms. White, testified at the PCR hearing that the videotape of the traffic stop was not edited.  Counsel testified she carefully examined the videotape and, while it did not show on the tape itself that microphone 1 and microphone 2 were "on" in the corner of the videotape, you could still hear what was taking place in the videotape.  Plea counsel further testified that the officer was asked about why the ""M-1" and "M-2" for microphones 1 and 2 did not show on the video, and he said "[t]hat his video just did not have that feature or whatever that we saw on some others."  Accordingly, it was plea counsel's belief that the tape had not been edited in any way prior to her receiving it  (app. 44-46).  In his response to the motion for summary judgment, the petitioner contends that "[i]t's clear that the video has been edited, but the volume becoming mute during the two deputies conversation at the front of the petitioner's car and on the driver-side" (doc. 53 at 10).  He further claims, "No one knows what the deputies were doing or what they are covering up because the sound is muted at this point, which is clearly evidence of editing" (*id.* at 21).  However, the petitioner has offered no credible evidence that the videotape of the stop and search was edited in any fashion.  As a result, the petitioner's claim that his guilty plea was involuntary because of ineffective assistance in failing to advise him the tape was edited has no merit as he has failed to show that his plea counsel's performance was deficient in this regard.

Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, the petitioner's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63 (1977).

Statements made during a guilty plea should be considered conclusive, unless the petitioner presents valid reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975) *overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir.1985). The petitioner received a substantial benefit for himself in taking the negotiated plea, and he has not shown anything which would overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing. *See United States v. Morrow*, 914 F.2d 608 (4th Cir. 1990). Moreover, "while the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of [former Section 2254(d), now Section 2254(e)(1)], the historical facts underlying such pleas are entitled to deference under the statute." *Sargent v. Waters*, 71 F.3d 158, 160 (4th Cir. 1995).

Based upon the foregoing, Ground Two is procedurally barred, and the petitioner has failed to show cause for the default and prejudice from the asserted error.

### Ground Three

In Ground Three of his petition, the petitioner argues that counsel was ineffective in failing to investigate the deputies who arrested him. He claims the deputies had credibility problems, and his guilty plea counsel failed to use their testimony to impeach them. The petitioner claims that, as a result, his guilty plea was not knowing and voluntary.

In the order of dismissal in the first PCR action, the judge noted that the plaintiff "testified that counsel failed to investigate the officers who arrested Applicant . . ." (app. 144). This PCR court did not rule on this particular issue in the order of dismissal (app. 138-52), and the petitioner did not file a Rule 59 motion to have the PCR court address the issue. Further, this ground was not raised on PCR appeal in either the *Johnson* petition or the *pro se* response. The petitioner's second, third, and fourth PCR actions, which were consolidated, could not preserve this ground as the actions were

17

dismissed on adequate and independent state grounds, i.e. Rule 41, SCRCP. *Lewis*, 497 U.S. at 780 (stating that "federal habeas corpus relief does not lie for errors of state law"). Accordingly, this ground is also procedurally barred. *Murray v. Carrier*, 477 U.S. 478, 488 (1986)(failure to appeal issue to state's appellate courts results in procedural bar on federal habeas review).

> To the extent the petitioner argues that the ineffectiveness of PCR counsel provides cause for the procedural default of this ground for relief, such claim fails because Ground Three is not substantially meritorious as will be discussed below. *See Martinez*, 132 S. Ct. at 1319. To the extent the petitioner raises a claim that ineffective assistance of PCR appellate counsel may allow for excuse of the default of Ground Three because it was not raised on appeal from the denial of PCR, he is mistaken. The Court in *Martinez* specifically left in place the prohibition in *Coleman v. Thompson* that allegations of ineffective assistance of collateral appeal counsel could not provide excuse to avoid a default. *Martinez*, 132 S.Ct. at 1320. *See Coleman*, 501 U.S. at 757 ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas.").

> In his response in opposition to the motion for summary judgment, the petitioner notes that Deputy Moore was indicted on November 30, 2010, for three counts of misconduct in office and three counts of taking of consideration or the like by sheriff or other for not performing duties (doc. 53 at 22). The petitioner also submitted newspaper articles regarding Deputy Moore's indictment (doc. 53-1 at 3-10). The petitioner's guilty plea counsel, Ms. White, represented Deputy Moore on the charges (*id.* at 3). The petitioner pled guilty in the case at issue here on October 16, 2008 (app. 1). The petitioner cannot show and has not shown how his plea counsel was ineffective in failing to discover

events that had not even occurred at the time of his guilty plea and sentencing. The petitioner argues in his response in opposition to the motion for summary judgment:

> [Plea] counsel testified at Petitioner's PCR hearing as to the veracity of former Deputy Moore's conduct, while simultaneously representing him. Counsel was his advocate, while Petitioner was complaining about his unethical behavior in his PCR hearing. In order to prevent a conflict of interest, counsel owed petitioner a duty to inform not only him, but the court during her testimony at Petitioner's PCR.

(Doc. 53 at 22). The petitioner is apparently attempting to argue that his plea counsel's representation of him was deficient based upon her testimony at the PCR hearing two and half years after his guilty plea/ sentencing, at which time plea counsel no longer represented him and he was, in fact, represented by PCR counsel. Clearly, the petitioner has not shown that his plea counsel's performance was deficient and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted). Based upon the foregoing, Ground Three has no merit, it is procedurally barred, and the petitioner has failed to show cause for the default and prejudice from the asserted error.

### *Other Possible Grounds*

To the extent the petitioner is attempting to raise a claim of a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) or a claim of prosecutorial misconduct based upon the State's failure to provide him with the certification records of the handler and drug dog, such claims are also procedurally barred on federal habeas review because they were procedurally defaulted in state court. The petitioner did not raise these claims but instead pled guilty, waiving and abandoning these claims. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("when a criminal defendant has solemnly admitted in open court that he is, in fact, guilty of the offense with which he is charged [he may only attack the voluntary and intelligent character of the plea, and] he may not thereafter raise independent claims

19

relating to the deprivation of constitutional rights that occurred prior to the entry of the plea"). There are no conditional guilty pleas in South Carolina state courts. *See State v. Passaro*, 567 S.E.2d 862, 866 (S.C. 2002) (noting that a free and voluntary guilty plea generally acts as a waiver of all non-jurisdictional defects and defenses) (citation omitted). Furthermore, the petitioner did not file a direct appeal. As a result, these claims, if raised, are procedurally barred on federal habeas review.

To the extent the petitioner is attempting to raise a free-standing Fourth Amendment claim, i.e. an illegal search and seizure claim, whether of his person or of his vehicle, this claim is barred under the doctrine enunciated in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that a federal court sitting in habeas may not grant relief on Fourth Amendment claim if "the State has provided an opportunity for full and fair litigation" of the claim. Where the petitioner could have made a challenge but chose not to make such a challenge in favor of a plea, the *Stone* doctrine will bar litigation of the claim in federal habeas. *See Muldrow v. Warden of Manning Correctional Inst.*, C.A. No. 9:07–1315–TLW, 2008 WL 533803 (D.S.C.2008) (holding although petitioner opted to plead guilty, he was nonetheless "given a full and fair chance to litigate the present issue in state court and federal habeas review is not available")*; Moore v. Hunt*, 499 F.Supp.2d 679, 683 (W.D.N.C.2007) ("Petitioner was afforded a full and fair opportunity to go to trial and litigate a Fourth Amendment search and seizure claim. Instead, Petitioner chose to plead guilty and waive his right to litigate this issue. Therefore, federal habeas review of the petitioner's Fourth Amendment claim is barred by *Stone v. Powell.*").

Further, to the extent the petitioner has attempted to raise free-standing claims of ineffective assistance of PCR counsel and/or PCR appellate counsel (see docs. 1-1, 34), such claims are not cognizable in the instant action as they are specifically barred by statute. Title 28, United States Code, Section 2254(i) provides: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings

20

shall not be a ground for relief in a proceeding arising under section 2254." *See also Martinez*, 132 S. Ct. at 1320 (noting statutory bar for a claim of ineffective assistance of PCR counsel as a ground for relief).

### *Merits Review*

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

### *Ground One*

As noted above, in Ground One of his petition, the petitioner claims that his guilty plea was not knowing and voluntary because his counsel "improperly advised [him] as to the certification of the K-9 and deputy's lawful ability to conduct free air sniffs" (doc. 1 at 5). The petitioner contends, "The absence of a lawful certification by K-9 and deputy

is a violation of the 14th amendment due process of law, therefore the evidence would have most probably been suppressed" (*id.*).  The petitioner argues in response to the motion for summary judgment that had he known "that the prosecution was suppressing the non-existence of the certification for the K-9 and deputy" he would not have entered the negotiated plea (doc. 53 at 12).

As noted above, the PCR court framed this issue in a slightly different manner than the allegation the petitioner makes in his petition.  However, the findings of the PCR court are also dispositive of the claim as the petitioner now states it.  In the order of dismissal, the PCR court noted that, at the PCR hearing, the petitioner's plea counsel, Ms. White, testified that both officers involved in the petitioner's case testified at the preliminary hearing; she cross-examined them; and the main issue arising from the preliminary hearing was that the dog was aggressively trained to scratch to indicate the presence of drugs (app. 140).  To that end, counsel filed motions for the training records of the dog used to search the petitioner's vehicle.  All the dogs used by the police were trained by a Mr. Kerchner who had 40 years of experience and was nationally recognized for his training of police dogs. Counsel could not recall any expert that was able to impeach Kerchner's methods at trial. Counsel testified she did not receive any documentation regarding the training of the dog, but she had worked on cases with Kerchner in the past and never had any problems with his training methods.  Counsel testified that the plea offer had an expiration date, that the dog certification records were not material pieces of evidence, and she did not want to let the plea offer expire.  Counsel testified that the food found in the front seat did not affect the canine's search of the vehicle and alert (app 141).  Counsel testified that after her expert reviewed the dog search, the petitioner hired his own expert.  Counsel testified her clients always make the decision whether to plead guilty or proceed to trial; counsel reviews everything with a client, but the client decides whether to plead guilty.  According to his counsel, while the petitioner was deciding whether to plead guilty, he hired an attorney in

22

California to review the case file. The California attorney advised the petitioner that the 12 year plea deal offered by the State was his best option (app. 141-42). Ultimately, the petitioner pled guilty and received a sentence of 12 years, while he faced a possible 30 year sentence if he had proceeded to trial (app. 134). The petitioner never indicated to counsel that he wished to back out of the plea, and counsel testified that they had had a lot of contact just before the plea hearing (app. 142).

The PCR court also noted that the petitioner testified at the PCR hearing, stating that counsel never informed him she did not have the dog certification records (app. 142). The petitioner testified that he felt he was rushed into pleading guilty (app. 144). The PCR court further noted that the petitioner testified that the dog certification records were never produced prior to the plea and that he thought counsel obtained all the relevant records (app. 144; *see* app. 100-101).

Ms. Drawdy also testified at the PCR hearing that she had filled in for the petitioner's attorney at his plea hearing. She stated that she would have explained to the petitioner his constitutional rights and ask him if he was ready for a plea hearing. Ms. Drawdy testified that the petitioner never indicated to her that he did not want to plead guilty (app. 144-45).

After noting the correct standard in *Strickland v. Washington*, 466 U.S. 668 (1984) with respect to ineffective assistance of counsel claims (app. 144-45), the PCR court considered the testimony of counsel, the petitioner, and witnesses (app. 146-49). The PCR court noted that the petitioner's "main concern seems to focus on the dog certification and training records" (app. 147). The court found as follows:

> Applicant testified that he was aware counsel filed motions to obtain the canine records, that Applicant did not view the canine records prior to his plea, that the records were not produced prior to his plea, and that Applicant believe[d] counsel obtained all the rcords. Counsel testified that she did not receive the canine records rquested in her motion prior to

Applicant's plea hearing. Counsel testified that she did not have any problem with Applicant entering a guilty plea without having obtained the canine records because the records were not a material issue in Applicant's case. Counsel testified that she was familiar with Mr. Kerchner's training qualificaations, that it was counsel's experience Mr. Kerchner's methods had not been impeached, and that counsel had worked with Mr. Kerchner on prior occasions.

(App. 147-48). The PCR court went on to find:

Here, the Applicant could not point to any specific matters counsel failed to discover which would have caused him to proceed wth a jury trial instead of pleading guilty. While Applicant alleges that he would not have pled guilty if he was aware that counsel did not obtain the canine records, Applicant was aware that counsel filed motions to obtain the canine records and Applicant admitted that he did not review any canine records prior to entering his guilty plea. Additionally, counsel testified that Applicant was fully aware that counsel did not have the canine records. This Court finds that Applicant made the decision to enter a guilty plea without having reviewed the canine records. This Court finds the Applicant offerd no evidence at the PCR hearing that counsel could have found that would have been likely to have any outcome more favorable to the Applicant. The Applicant did not produce any witnesses or offer any other evidence from which this Court could conclude that the outcome of the case would likely have been different, had that evidence been developed. While counsel would have liked to have had the canine records prior to Applicant's plea, counsel was familiar with Mr. Kerchner's methods and counsel's own expert Mr. Hanlin found no issues with the canine search and alert. This Court finds that counsel's conduct was reasonable and that Applicant failed to show that counsel's performance was deficient. This Court finds that Applicant failed to who any resulting prejudice; therefore, these allegations are denied and dismissed.

(App. 149).

With regard to the petitioner's claim that his guilty plea was rendered involuntary based upon his plea counsel's failure to obtain the canine certification records, the PCR court noted the prior finding that plea counsel was not ineffective in this regard and that the petitioner made the decision to plead guilty while fully aware that neither he nor

24

counsel had reviewed the records (app. 150). The court found that "the overwhelming evidence in the record presented through the testimony of the witnesses at the hearing reflects that the plea was knowingly and voluntarily entered" (app. 151 (citations omitted)).

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that his plea counsel's representation fell below an objectively reasonable standard or any resulting prejudice, and the record supports the PCR court's determination. The PCR court's determination with respect to credibility is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008)

25

("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." (citing 28 U.S.C. § 2254(e)(1))).

Here, the petitioner chose to accept the negotiated plea/sentence of 12 years rather than risk going to trial and facing 30 years, after being advised by two different attorneys and an expert that the search was lawful and he would likely lose a suppression hearing if he proceeded to trial. The petitioner has failed to show deficient performance, and he has also failed to show resulting prejudice, i.e. there is no reasonable probability that if counsel had "properly advise[d] [the petitioner] as to the certification of the K-9 and deputy's lawful ability to conduct free air sniffs," he would not have pled guilty but would have proceeded to trial. As counsel credibly testified, the certification records were not critical pieces of evidence in this case as she was familiar with the officer who handled the dog, as she was going to use him in a prior suppression hearing for another client and he properly handled drug dogs, and she was thoroughly familiar with the person who trained the dog at issue in this case, because she had defended other clients where the same trainer was involved and there was no issue with his qualifications or manner of training based on her investigation in those cases. Counsel also credibly testified she had no problems with Deputy Crawford's professionalism as she had dealt with him in the past. (App. 46-51).

"Probable cause to conduct a search based on a drug-detection dog's alert exists when the totality of the circumstances, 'viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.'" *U.S. v. Green*, 740 F.3d 275, 282 (4th Cir. 2014) (quoting *Florida v. Harris*, 133 S.Ct. 1050, 1058 (2013). As the Supreme Court of the United States recently held:

> [E]vidence of a dog's satisfactory performance in a certification
> or training program can itself provide sufficient reason to trust
> his alert. If a bona fide organization has certified a dog after

26

> testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs. After all, law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources.

*Florida v. Harris,* 133 S.Ct. 1050, 1057 (2013).

The petitioner has failed to show that the evidence of the dog search would have been suppressed had he gone to trial. Here, based on counsel's credible testimony at the PCR hearing, counsel knew Deputy Crawford would have been able to testify at a suppression hearing and at trial regarding his dog's positive indication on the petitioner's vehicle. Counsel's thorough investigation of the case, and her thorough investigation of prior cases involving traffic stops and drug dog searches on Interstate I-85, revealed the dog was trained by Mr. Kerchner, and counsel was familiar with him. He was a nationally recognized dog trainer, with 40 years' experience, and no one had been able to attack his qualifications or methods as a dog trainer in previous cases. Deputy Crawford had extensive experience and training as a dog handler in these type cases, and counsel had consulted with him on another case and was thoroughly familiar with his professionalism and his record-keeping regarding his own certification and the dogs he handled. Counsel had even considered calling Deputy Crawford as an expert in a previous case she defended because he properly handled drug dogs in similar searches and kept proper training records (App. 46-51). As a result, as counsel credibly testified, the officer and dog certification records in this particular case were not material to the decision to plead guilty or go to trial. They were not something that was worth losing a plea offer with a time deadline made to the petitioner by the State (App. 46-54).

27

The petitioner also has made no showing of his claims regarding "[t]he absence of a lawful certification by K-9 and deputy" or that the State "suppress[ed] the non-existence of the certification." In addition to counsel's credible testimony at PCR, the respondent has attached to the reply memorandum documents showing that Deputy Crawford and Antac received a Narcotics Certification (Marijuana and Cocaine) through the National Police Canine Association as well as additional training prior to the petitioner's arrest (doc. 59-1). Based upon the foregoing, the petitioner has failed to prove deficient performance on the part of his plea counsel and has failed to show that but for counsel's alleged deficient performance, he would not have pled guilty and would have proceeded to trial. Further, the petitioner received a substantial benefit for himself by pleading guilty, and he has not shown anything that would overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing of a voluntary decision to plead guilty (*see* app. 1-7). *See United States v. Morrow*, 914 F.2d 608, 614 (4th Cir. 1990) ("declarations made in open court carry a strong presumption of veracity") (citations omitted).

The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. The petitioner also has not shown by clear and convincing evidence that the PCR court reached an unreasonable determination of the facts on this issue. Based upon the foregoing, this ground for relief fails on the merits.

### *Ground Four*

In Ground Four, the petitioner alleges that his plea counsel improperly advised him as to the profession of the K-9 expert she hired and that he would not have pled guilty had counsel correctly advised me as to this "conflict of interest." This ground was considered by and dismissed by the first PCR court (app. 149-50) and was raised by the petitioner in his *pro se* response to the *Johnson* petition in the PCR appeal (doc. 41-5 at 4).

In the order of dismissal, the PCR court noted that, at the PCR hearing, Ms. White, the petitioner's plea counsel, testified she was the former head solicitor for the Tenth Circuit and, as a result of her experience, she was very familiar with the issues involved in drug cases that were a result of canine searches. When the officers involved in the petitioner's case testified at the preliminary hearing, she cross-examined them. The main issue arising from the preliminary hearing was that the dog was aggressively trained to scratch to indicate the presence of drugs. Plea counsel testified the testimony presented at the preliminary hearing was corroborated by the discovery materials. Counsel testified she sent the videotape of the stop and dog search to Andy Hamellin[7], whose credentials included law enforcement experience as well as experience with police dogs. Counsel testified she utilized Hamellin's police dog expertise in previous cases she handled, including an extensive suppression hearing, and she never told the petitioner that Hamelin was pro-defense or pro-prosecution (app. 46-49, 58-59, 140-42).

The PCR court further noted that the petitioner testified counsel informed him that the expert she hired to review the dog search disliked police officers, which made the petitioner feel comfortable. The petitioner testified that if he had known about Hamellin's connection to law enforcement he would have asked counsel to use a different expert (app. 92-93, 143). The petitioner testified that counsel spoke with Hamellin on a speaker phone with the petitioner present two weeks before the plea hearing. He testified that Hamellin discussed his opinion and findings during the phone call. He claimed that he found out after he was incarcerated that Mr. Hamellin was "associated with a Sheriff's Department. He was the director of K-9 services for the Lincoln County Sheriff's Department." The petitioner testified he obtained a second opinion on the video of the dog search, after his

---

[7]The PCR court refers to the expert as "Andy Hanlin" (app. 140). The undersigned has used the spelling of the expert's name from the PCR hearing transcript (app. 48).

plea and sentencing, and this opinion was different from Hamellin's opinion (app. 94, 96-98, 143)

The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent (app. 145-46). Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Further, the record supports the PCR court's determination.

The PCR court noted it had reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly. The PCR court noted that the petitioner alleged a conflict of interest existed with the drug dog training expert, Mr. Hamellin, because of Hamellin's connection to law enforcement. The PCR court stated, "'In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" (app. 150 (citing *Duncan v. State*, 315 S.E.2d 809 (S.C. 1984)). The PCR court further stated that the petitioner must show his attorney actually owed duties to a party whose interests were adverse to his case (app. 150 (citing *Duncan*, 315 S.E.2d 809 and *Thomas v. State*, 551 S.E.2d 254 (S.C. 2001)). The PCR court reasonably found that the petitioner's conflict of interest claim was not proper for PCR as the petitioner did not assert any conflict of interest existed with counsel; therefore, this allegation was properly denied and dismissed (app. 150).

Furthermore, the petitioner did not establish any prejudice as he did not call his own alleged expert at the PCR hearing to testify to what his findings were in this case (app. 97). *See Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner's

allegation attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony); *Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998)("This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial.") (citation omitted).

In light of the foregoing, the petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue, nor has he shown by clear and convincing evidence that the PCR court reached an unreasonable determination of the facts on this issue. Therefore this ground fails on the merits and should be dismissed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 40) be granted. It is further recommended that the district court deny the petitioner's motion to strike redundant portions of the respondent's return and memorandum (doc. 46). The district court should also deny a certificate of appealability. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

July 14, 2016
Greenville, South Carolina

31

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).